Filed 7/7/26  Trevena v. Triller CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OLIVER TREVENA, | B340896 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV05840) |
| v. | |
| TRILLER, INC., | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steve Cochran, Judge.  Affirmed in part, reversed in part, and remanded.

Keosian Law and Natalie Hairabedian Suri for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

————————————

Plaintiff and appellant Oliver Trevena filed a complaint against defendants Triller, Inc. (Triller), Triller Hold Co LLC, Mike Lu, and Proxima Media, LLC (collectively, defendants),[1] asserting fraud and breach of contract claims.  Trevena alleged that in 2017, he and Triller CEO Lu discussed a partnership to grow Triller's new social media app and Lu gave Trevena a 2 percent ownership stake in Triller.  Trevena claimed defendants deliberately failed to honor their promise to recognize that ownership stake after inducing him to invest significant labor and goodwill in Triller.  Defendants moved for summary judgment.  The trial court granted the motion and dismissed Trevena's complaint.

We reverse as to Trevena's fraud causes of action.  Lu's alleged representations to Trevena were sufficiently specific to form the basis of a fraud claim.  Trevena also established that triable issues of material fact exist regarding whether Lu made the alleged misrepresentations.

**FACTUAL AND PROCEDURAL BACKGROUND**

Trevena is an actor and producer.  In 2017, he met Lu, Triller's CEO.  Triller's main product is a video-based social media app.

According to Trevena, during his initial meeting with Lu, he shared his ideas with Lu about "how to develop and expand the Triller app."  They "discussed how a partnership" would be mutually beneficial, and they "came to a mutual agreement that [Trevena] would be a consultant for Triller, as well as have shares in the company and be one of the owners of the Triller

---

[1]     In October 2019, Proxima Media, LLC acquired a majority interest in Triller from Triller's parent company, Carnegie Technologies, LLC.

2

app." Trevena claims Lu represented that Trevena "would be a 2% shareholder and owner of Triller," and that "it would be worth a lot if [Trevena] helped [him] grow the app." Trevena also asserts that Lu always held himself out as "the unequivocal sole owner and decision maker with respect to the Triller app."

In April 2018, Trevena and Triller entered into a Consulting Agreement. Trevena agreed to provide services as an "entertainment reporter/booker—to recruit and produce celebrity personalities to use and promote the Triller platform." The contract expired in December 2018.[2] The Consulting Agreement did not include any provisions regarding Trevena's equity or ownership in Triller.

Throughout 2018, Trevena introduced Lu and other Triller executives to his contacts in the music and entertainment industry. Trevena also created his own content to live stream on the Triller app.

In late 2018, Lu sent Trevena a text message requesting that he post " 'a TON of [T]rillers in the next 10-days' " in the run-up to closing another round of investment funding. Lu told Trevena, " 'Time to make your shares worth a couple of million dollars! I'm actually not joking[.] If we do this right[,] [a] billion exit is realistic.' " Lu also texted Trevena, " 'Next 10 days if we can get . . . someone big to do another [T]riller[,] I'll def reward it with more shares.' " Trevena did as Lu requested.

---

[2]     Defendants claim Triller and Trevena entered into a second consulting agreement for a reduced fee in August 2019. Trevena denies signing a second agreement but claims he agreed to Triller's reduced fee because he believed he held an ownership stake in Triller.

In 2019, Trevena continued to introduce Triller executives to his personal connections in the industry. He also took Triller executives to meetings with music labels in Europe and attended multiple dinners to persuade potential partners to invest in Triller.

In early 2019, Trevena texted Lu on two different occasions that he wanted to " 'get [his] deal set' " and " 'lock [his] Triller deal in.' " Lu reassured Trevena that Triller's general manager had " 'already put [Trevena] in the budget' " presented to the board and that Lu would talk to the general manager. Lu later confirmed that he talked to Triller's other CEO, Bobby Sarnevesht, " 'about [Trevena's] involvement' " and told Trevena, " 'We are good.' "

In September 2019, Lu texted Trevena asking for his full legal name and address " 'for the advisor shares that we're sending out[.]' " Trevena e-mailed Lu the requested information. In the months that followed, Trevena and Lu continued to exchange text messages but did not discuss the shares.[3]

According to Trevena, in the summer of 2020, Sarnevesht twice acknowledged Trevena was owed shares, including once in Lu's presence. Trevena claims that Sarnevesht told him at a dinner with Lu that "[Sarnevesht] knew how much [Trevena] had done for Triller and how involved and vested [Trevena] was in the company." Sarnevesht said he would get the paperwork in order for Trevena's board position and shares. Trevena tried to follow up with Sarnevesht numerous times, but Sarnevesht did not show up to their scheduled meetings. He subsequently assured Trevena in person "that [Trevena] was a partner in the app and

---

[3]     Trevena and Lu primarily discussed the status of outstanding consulting fees owed to Trevena.

4

that [Sarnevesht] was aware of everything that [Trevena] had done in the earliest stages and he would make sure that [Trevena] got his shares."

Around this time, Trevena texted Lu to ask when he would receive the paperwork for the "[a]dvisory board shares." Lu initially responded that he would talk to the legal team. In later messages, Lu told Trevena that he would " 'bring it up,' " but it was " 'not [his] call anymore' " because it required board approval. Trevena responded: " 'I guess you should tell them you gave your word several times that I was going to be on the advisory board and given shares pre and post Proxima takeover and let's hope they honor that.' "

A few days later, Trevena texted Lu: " 'I have not received my board shares or paperwork even though I was told by you on several occasions that I was for sure getting them. I would not of [*sic*] used my network and pushed how I did jus[t] for $. I did it as I was told I was part of the team for the long haul. Part of the board.' " He accused Lu of " 'not stick[ing] to [his] word' " and insisted that either Lu secure board approval for his shares " 'or try to make this right [him]self with shares.' "

In September 2020, Sarnevesht texted Trevena to confirm he had been added to the advisory board and granted "5k in Warrant per month." In October, Triller's counsel sent Trevena an Advisory Board Agreement and a Warrant Agreement. The Advisory Board Agreement retained Trevena as an advisor to Triller for a term of one year and, as compensation for his services, authorized a warrant for the purchase of $5,000 of shares at fair market value each month. The Warrant Agreement separately offered Trevena the option to purchase 17,947 shares at $8.36, equaling approximately $150,000 in

5

equity.  Trevena did not sign the agreements because he believed they did not reflect Lu's earlier statements giving him a 2 percent ownership stake in Triller.

### Complaint

In February 2021, Trevena filed a complaint against defendants asserting causes of action for breach of contract, breach of implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud and deceit, fraud and intentional misrepresentation, fraud in the inducement, fraudulent concealment, promissory fraud, and unfair competition.  The complaint sought an accounting.

Trevena's fraud causes of action alleged that Lu falsely promised to make him an owner and shareholder in 2017, and subsequently misrepresented Trevena's status as a shareholder, to induce Trevena to use "his promotional capabilities and celebrity status" to grow the app and secure investment, without ever intending to "deliver" his "shares and ownership rights" in Triller.

### Motion for Summary Judgment

Defendants moved for summary judgment, or, in the alternative, summary adjudication.  With respect to the fraud claims, defendants argued Lu's alleged promise was not an actionable representation because there was no evidence regarding the material terms of Trevena's alleged ownership stake, such as the form of the shares, the number of units, vesting or exercise provisions, the date of issue, or the specific entity in which he would hold equity.  Defendants also contended that many of the alleged misrepresentations—such as Lu's statement that the shares would be worth millions—were

opinions and predictions of future value that were not actionable as fraud.

Defendants argued that Trevena could not show any promise Lu made was false or made with fraudulent intent. Defendants maintained that the promise Lu made about shares or equity guaranteed Trevena only the opportunity to become an owner and shareholder of Triller "someday" in the future. Defendants argued they fulfilled that promise by sending Trevena the offers for purchase memorialized in the Advisory Board Agreement and the Warrant Agreement. Defendants also contended that Trevena could not raise triable issues as to his contract causes of action.

Defendants' compendium of evidence included a declaration from Lu, Trevena's responses to interrogatories, Lu's responses to interrogatories, the Consulting Agreement, the Advisory Board Agreement, and the Warrant Agreement. In his verified discovery responses, Lu stated "[t]here was never an agreement by Triller (nor any person associated with Triller) to provide Mr. Trevena with any equity, stock, options, or warrants in Triller before he rendered any services." He also stated that he made Trevena the limited offer to acquire shares in Triller through the Warrant Agreement "as a gesture of appreciation for Mr. Trevena's prior efforts." According to Lu, this was consistent with his "offer to provide Mr. Trevena with the right to acquire approximately $150,000 worth of equity ownership."

***Opposition to Motion for Summary Judgment***

Trevena opposed defendants' summary judgment motion, arguing that triable issues existed as to his fraud causes of action. He contended that the terms of Lu's promise of 2 percent ownership in Triller were sufficiently clear and definite, and that

7

there was a material factual dispute about whether Lu falsely promised Trevena an ownership stake to "entic[e] Plaintiff to divulge his network and his connections . . . ." Trevena contended that in addition to evidence that Lu made an express promise of ownership, circumstantial evidence indicated Lu never intended to keep his promise at the time he made it, "but simply engaged Plaintiff so that he [could] utilize Plaintiff's network and connections for his own personal benefit."

In his declaration supporting the opposition, Trevena referenced and attached e-mails he sent from 2018 to 2020, introducing Triller management to his connections in the entertainment industry. He submitted a lengthy text message chain documenting his communications with Lu between 2018 and 2020. Trevena further supported the opposition with a declaration from Lu's former fiancée stating that Lu had no connections in Hollywood until he met Trevena. Lu told her that Trevena was "a partner and a stake holder [*sic*] in Triller," and she was present when Lu introduced Trevena to others as a partner in Triller.

### Hearing on Motion for Summary Judgment

In 2024, after two hearings on the motion, the trial court granted summary judgment. As to Trevena's contract causes of action, the court stated it did not find "a demonstrable difference in scope between what's in the consultancy agreement and what Plaintiff describes as the services provided." The court also did not find a material factual dispute about the formation of a contract, reasoning: "I think the case cited[,] *Barton*[ *v. Elexsys Internat., Inc.* (1998) 62 Cal.App.4th 1182 (*Barton*)], . . . is illustrative. I believe the parties were talking about Plaintiff having some ownership interest . . . but I don't think terms were

8

reached or that it was certain enough to create [a] legal enforceable obligation." The court then explained: "The fraud claims are not close. Because I'm finding that no contract was formed, the purchase agreement or advisory board agreement was not breach of anything." The court also summarily disposed of Trevena's remaining causes of action.[4]

Trevena timely appealed. On appeal, Trevena challenges only the trial court's ruling as to his fraud-based causes of action.[5]

## DISCUSSION

### I. Standard of Review

A defendant moving for summary judgment has the initial burden of showing that the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) As the moving party, the

---

[4] The court entered an order granting defendants' motion for summary judgment "dismiss[ing] all of Plaintiff's causes of action in Plaintiff's complaint with prejudice" and separately signed and entered an order of dismissal. We deem the trial court's order granting summary judgment a final judgment for purposes of the appeal. (*Ung v. Koehler* (2005) 135 Cal.App.4th 186, 192, fn. 2; see *Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 6 [trial court order that "clearly intended to finally dispose of plaintiffs' complaint" amended to include entry of judgment].)

[5] Defendants sought summary adjudication as an alternative to summary judgment and Trevena does not challenge the trial court's ruling as to his contract-based claims. We therefore affirm the judgment as to the contract causes of action. (*Severin Mobile Towing, Inc. v. JPMorgan Chase Bank, N.A.* (2021) 65 Cal.App.5th 292, 302–303.)

9

defendant "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact . . . ." (*Aguilar*, at p. 850.) A defendant must either present evidence that "conclusively negates an element of the plaintiff's cause of action" or present evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at p. 855; see also *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 367 [moving party must "affirmatively establish the factual conditions or predicates . . . by undisputed facts in order to shift the burden on the motion to [plaintiff]"].)

If the defendant meets this initial threshold, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) A triable issue exists if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.) In determining whether triable issues exist, courts " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.) If the evidence does not raise a triable issue of material fact, the defendant is entitled to summary judgment. (*Ibid.*)

We review an order granting summary judgment de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) " '[W]e apply the same three-step analysis required of the trial court: We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine

10

whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue.' [Citation.]" (*Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1161–1162.)

## II. There Are Triable Issues of Material Fact as to Trevena's Fraud Claim[6]

Establishing a fraud claim requires "evidence of (1) a misrepresentation, (2) knowledge of falsity (or 'scienter'), (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance, and (5) resulting damage." (*Unterberger v. Red Bull North America, Inc.* (2008) 162 Cal.App.4th 414, 423.) " 'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).)

As an initial matter, we agree with Trevena that defendants could not defeat his fraud claim as a matter of law

---

[6] Trevena's complaint stated five separate causes of action based in fraud: fraud and deceit, fraud and intentional misrepresentation, fraud in the inducement, fraudulent concealment, and fraudulent promise without intent to perform. The unfair competition cause of action was derivative of the fraud causes of action. The parties did not distinguish between these causes of action in their briefing on summary judgment. On appeal, Trevena challenges the trial court's ruling as to a singular "fraud claim" and cites the elements of promissory fraud

11

merely by demonstrating that, as the trial court indicated, there was no "legally enforceable obligation" and "no contract was formed." Whether or not there was a meeting of the minds or consideration sufficient to form a contract, "[a]ctionable deceit exists where a promise is made 'without any intention of performing it.' (Civ. Code, § 1710, subd. (4).)" (*Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1414.) Indeed, even where the plaintiff alleges the defendant has fraudulently induced the plaintiff to enter into a contract, "the plaintiff's claim does not depend upon whether the defendant's promise is ultimately enforceable as a contract." (*Lazar*, *supra*, 12 Cal.4th at p. 638.)

The trial court thus could not find summary judgment warranted as to the fraud claim based on a lack of evidence that the parties entered into a contract giving Trevena an ownership interest in Triller. However, because we will affirm the trial court's ruling if correct on any ground supported by the record, we review the matter de novo to determine whether defendants established they were entitled to summary judgment on any other basis. (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.)

---

in Civil Code section 1710, subdivision (4). Because Trevena's fraud causes of action allege the same injury— that he did not receive his promised 2 percent ownership in Triller—we consider his fraud allegations as a single cause of action and similarly refer to them as a singular "fraud claim" in this opinion. (See *Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1003, 1004 [multiple fraud theories gave rise to single cause of action where only one injury alleged].)

## A. The alleged representations were sufficiently specific to be actionable

Defendants argued that Trevena's evidence of Lu's alleged representations did not identify terms of ownership sufficiently definite or certain to support a fraud claim. Citing Trevena's complaint and interrogatory responses, defendants argued the alleged promise omitted "what form the[ ] 'ownership' or 'shares' would take, how they would be provided," which entity would provide them, how Trevena's ownership share would be calculated, "vesting or exercise provisions" attached to the shares, or when he was supposed to receive the shares.

"A 'promise' is an assurance that a person will or will not do something." (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 417.) A promise must be sufficiently clear to be actionable as a legal obligation. (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225 (*Aceves*) [elements of fraud based on false promise similar to elements of promissory estoppel, which required " ' " 'a promise clear and unambiguous in its terms' " ' "]; see *id.* at pp. 226, 231.) "To be enforceable, a promise need only be ' "definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." ' [Citation.]" (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1045.)

The evidence of Lu's statements to Trevena is sufficient to establish an actionable representation. Trevena's interrogatory responses and declaration reflect that at the inception of their business relationship, during a discussion about a mutually beneficial "partnership," Lu represented that Trevena would be an owner of Triller and would receive shares commensurate with

a 2 percent shareholder status.  Trevena identified who made the representation (Lu, Triller's CEO) and described Lu's assurance that he would take a specific action (Lu would give Trevena shares representing a 2 percent ownership stake).  This is sufficiently clear and definite to determine the scope of Lu's performance—either Lu gave Trevena a 2 percent shareholder interest in Triller, or he did not.  (See, e.g., *Aceves*, *supra*, 192 Cal.App.4th at p. 226 [bank's promise to negotiate before foreclosure was clear and unambiguous because "[t]he bank either did or did not negotiate"].)

Defendants' cited authorities did not support their contention that Lu's promise is not an actionable basis for fraud.  In the cited authorities, courts determined statements were too vague and uncertain to form legal obligations when they conditioned future outcomes on subjective performance (*Rochlis v. Walt Disney Co.* (1993) 19 Cal.App.4th 201, 213−216 [commitment to award "reasonable" bonuses "appropriate to [plaintiff's] responsibilities and performance" was not an enforceable promise]); when they were made as general, passing reassurances about a plaintiff employee's future financial condition (*Barton*, *supra*, 62 Cal.App.4th at pp. 1190–1191 [statements that key employees " 'had to be taken care of' " and that plaintiff had " ' "nothing to worry about" ' " because he had " ' "100,000 shares of stock," ' " when he in fact had far less, was not a promise that stock options would continue to vest after termination]); or when they concerned a particular transaction that typically required definite terms to be enforceable (*Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 115 ["usual principles of lender liability" required "letter of commitment" to include specific loan terms to constitute

14

enforceable obligation for permanent financing]). In contrast, here, there is evidence that Lu made an affirmative and unequivocal representation to Trevena that he would receive a specific and quantifiable ownership stake in a business enterprise.

Defendants also contended that certain statements identified as misrepresentations—namely, Lu's statements that the shares would be worth millions of dollars and that he would "def[initely]" be rewarding Trevena with more shares—were inactionable "opinions, puffery, or predictions of future events." Defendants' argument missed the mark. These statements are not the misrepresentations that form the basis for Trevena's fraud claim. Rather, by referencing Trevena's shares or implying their existence, these statements suggest Lu understood Trevena to be a shareholder of the company at the time he made them. A reasonable trier of fact could conclude from this evidence that Lu made the misrepresentation at the core of the fraud claim—that Lu gave Trevena an ownership interest in Triller and promised to give him shares commensurate with that interest.

B.    **Triable issues exist as to whether Lu made the alleged misrepresentation**

In their summary judgment motion, defendants argued that Lu promised Trevena only "[t]he opportunity to be an 'owner and shareholder of '" Triller, which they fulfilled by providing Trevena with the Advisory Board Agreement and the Warrant Agreement affording purchase options for shares. They argued Trevena could not show *this* representation was false or made with fraudulent intent. They denied that Lu ever represented to Trevena that he already had an ownership interest in Triller.

15

The issues to be decided in a summary judgment motion are framed by the pleadings.  Trevena's complaint alleged that Lu represented that he was giving Trevena an ownership stake in Triller, and that he promised to provide Trevena shares commensurate with that established ownership.  As to this alleged misrepresentation, defendants' summary judgment motion asserted only that there was no evidence it was ever made.  Defendants did not advance arguments as to Trevena's ability to prove the falsity or fraudulent intent of the representation.[7]

Defendants' evidence was sufficient to make a prima facie showing that Lu did not give Trevena an ownership interest in Triller or promise that defendants would give him shares.  In verified responses to Trevena's interrogatories, Lu stated defendants had never agreed to provide Trevena "with equity, stock, options, or warrants in Triller before he rendered any services"; "as a gesture of appreciation" for Trevena's efforts, Lu offered him "the ability to acquire $150,000 of equity in Triller"; and consistent with this, defendants later sent Trevena the Warrant Agreement.

The burden then shifted to Trevena to present evidence from which a reasonable trier of fact could conclude that Lu promised Trevena would receive shares themselves, not merely an option to purchase them.  Trevena met this burden.

Trevena declared that he and Lu negotiated and agreed to a mutually beneficial "partnership" in which Lu made Trevena an owner in Triller and promised him shares consistent with a 2 percent ownership stake, because Trevena's extensive network

---

[7]     Defendants' motion did not argue that Trevena could not establish justifiable reliance or damages.

16

in the entertainment industry would help grow the app.  He stated that he leveraged his personal network for Triller because he believed he was an owner and shareholder who would benefit if the company succeeded financially.  Lu encouraged this impression by referencing the value of Trevena's shares and promising "more shares."  Trevena further declared that Sarnevesht acknowledged that Trevena was entitled to shares, and he promised to deliver them on more than one occasion.  When Trevena confronted Lu about his promise, Lu did not dispute Trevena's assertion that Lu had guaranteed Trevena the shares themselves years earlier.  Finally, Trevena proffered evidence that Lu represented to others that Trevena was a "partner" and "stakeholder" in Triller.

Evidence that Trevena and others understood he had an ownership interest, Lu indicated Trevena stood to profit as a *current* shareholder, and Lu did not dispute Trevena's understanding of what he was owed, was sufficient to raise a triable issue that Lu falsely represented that Trevena had an ownership interest in Triller.

## DISPOSITION

The trial court judgment is reversed as to Trevena's fifth cause of action for fraud and deceit; sixth cause of action for fraud and intentional misrepresentation; seventh cause of action for fraud in the inducement; eighth cause of action for fraudulent concealment; ninth cause of action for promissory fraud; and tenth cause of action for unfair competition derivative of the fraud claim. We direct the trial court to enter an order granting summary adjudication of the remaining causes of action. Appellant to bear his own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, Acting P. J.


We concur:



HANASONO, J.



KARNOW, J.*

---

\*      Retired Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


18